112 So.2d 351

**May PIKE**

**v.**

**STATE of Alabama.**

**6 Div. 358.**

Supreme Court of Alabama.

May 21, 1959.

Beddow, Gwin & Embry and Roderick Beddow, Jr., Birmingham, for appellant.

MacDonald Gallion, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for appellee.

LAWSON, Justice.

This is an appeal from a final decree in and by which an automobile was condemned and ordered sold, based on a finding that it had been knowingly used for the transportation or storage of lottery paraphernalia. Act No. 375, approved August 7, 1951, Acts of Alabama 1950–51, Vol. I, page 666.

The State of Alabama, on the relation of Emmett Perry, as Solicitor of the Tenth Judicial Circuit of Alabama, filed a petition in the Circuit Court of Jefferson County, in Equity, alleging that one 1958 Oldsmobile was seized while being knowingly used by Louis Pike for the transportation or storage of lottery slips, lottery tickets, lottery equipment, papers, writings or other devices, used or to be used, or adapted, devised, or designed for the purpose of playing, carrying on, or conducting a lottery, contrary to law.

Notice was given by the register in accordance with the order of the court naming a day "for all parties claiming any right, title or interest in the said property (vehicle) sought to be condemned to appear and propound their claims, if any they have, and the Register is ordered to give notice as required by statute."

Mrs. May Pike, the wife of Louis Pike who was driving the automobile at the time it was seized, filed her claim to

the automobile. She alleged that she was the true and lawful owner of the automobile and "that at the time said automobile was loaned by her to Lewis (sic) Pike she had no knowledge that it was to be used for the transportation of lottery paraphernalia nor could she have ascertained the same by diligent inquiry."

Louis Pike was transporting lottery paraphernalia at the time the automobile was seized. There is no controversy as to that fact, and the evidence shows without conflict that he had the reputation of participating in lotteries. Louis Pike had been convicted of violating the lottery laws on five occasions. The last conviction was in 1950, approximately two years after he married the claimant, May Pike.

Act No. 375, supra, a local act applicable only to Jefferson County, provides in part as follows:

"Section 2. * * * It shall, however, be necessary for the state to show that the owner of said conveyance of vehicle knew that said prohibited lottery paraphernalia was located or contained in said conveyance or vehicle, or had loaned or bailed said conveyance or vehicle to a person with knowledge that lottery paraphernalia was or would be placed, stored or transported therein or that such owner knew or should have known that the borrower or bailee would use said conveyance or vehicle for the storage or transportation of lottery paraphernalia. The reputation of the owner, borrower or bailee of any such conveyance or vehicle as a person who had been engaged in operating or connected with lotteries, gambling or gaming, or, the fact that such person had previously been convicted of a violation of any of the laws of the United States or any state or any municipal ordinance relating to gaming, gambling, or lotteries shall be prima facie evidence

that he knew that said lottery paraphernalia was contained therein and in the case of a borrower or bailee, that the owner knew or should have known that such borrower or bailee would use said conveyance or vehicle for the storage or transportation of lottery paraphernalia."

Mrs. May Pike testified that she is the wife of Louis Pike and is the owner of the automobile sought to be condemned; that she bought it from "Steel City Oldsmobile;" that "the price was four something, I am not sure." She stated that she paid cash for the automobile out of her own funds; that she had some money when she left her first husband and gets rents amounting to $355 a month. Her husband gave her an allowance but she did not know where his money came from. He was not in business at that time. She produced no bill of sale but did introduce a receipt showing that the license was issued in her name. She stated that she never let her husband use the car and that on the afternoon in question he obtained it without her consent from a garage where she left it for servicing. She said that her husband never discussed lotteries with her but that she had heard him discuss them with other people. She was asked the following questions and gave the following answers:

"Q. Do you tell his honor that you did not know Louis (sic) Pike was engaged in the lottery business?

"A. Not of my own knowledge. No sir.

"Q. Not of your own knowledge?

"A. No, sir."

The evidence in this case was heard by the trial judge, who was in a position to observe the demeanor of the claimant, and we cannot say that the trial court would not have been justified in finding from the evidence that the testimony of Mrs. May Pike was not suf-

ficient to overcome the prima facie presumption established by the State.

The judgment is affirmed.

Affirmed.

LIVINGSTON, C. J., and STAKELY and MERRILL, JJ., concur.